3-11-056 Maurice and Susan Lyon and Jeffrey Lyon Appellees by John Robertson and Mark Burroughs v. David and Marilyn Carlson Appellants by Jude Redwood Ms. Redwood Good morning, Your Honors May it please the Court and Council When the facts aren't on your side and the law isn't on your side, you tackle opposing parties for counsel. That's what happened here. The breach of fiduciary duty in this case was proved, although Judge Stewart stated on January 14, 2010, when I was not in the courtroom at an ex parte hearing, that the plaintiffs never proved any breach of fiduciary duty. He later stated on October 1, 2010, that the plaintiffs did prove a breach of fiduciary duty, yet the plaintiffs lost. We have here a small corporation, a family corporation. In this case, Susan and Maurice acted in bad faith when they opened a competing business in 2005 against the interest of their own corporation. They acted in bad faith when they transacted business with themselves. They sat on both sides of the transaction. And the proof is that Qualdes was given discounts that no other customer was given. The proof is that Qualdes took product from Cornucopia and in the entire year of 2006 paid nothing, not a penny. Now, the evidence also showed that there was no keeping of records on the Qualdes side. In the depositions, both Maurice Lyon and Hannah Lyon testified that there wasn't a computer there, there wasn't a list, there was nowhere to keep the records. And the plaintiffs found it difficult to prove the actual amount of monetary damages because of this lack of record. But what was proved by a Qualdes fine report, which was entered into evidence and is found at the appendix at 383, is a fine report from Qualdes, and I've marked it in color here, with the yellow showing the payments that Qualdes made in year 2005, the green showing the payments that Qualdes made in 2007, and the pink, where I say 2006 accounting, it shows that there's no 2006 accounting whatsoever. That's a damage to the corporation. This kind of fraud continued after the filing of the litigation. And if you take the time to look at this extremely important document, which is found at appendix 383 and other places, it was a trial exhibit. The tiny writing there says, Maury hasn't done bookkeeping since 3-25-07 and he has lost his stubs from 3-27 to 6-29-07. I would submit to the court that that is fraud. When you're in litigation, you don't lose your stubs and you don't stop bookkeeping that you started doing. Susan and Maurice refused to tell the other directors about the business transactions. And as I said in the briefing, as you can read in the evidence, it's none of your business. Over and over, they just told the others that it's none of your business. Other evidence that came in of the fraud, which continued after the filing of the lawsuit, is Susan Lyon's willingness to submit fraudulent discovery. Debbie Marino testified as to a bill that she received for a catering. When it was tendered in discovery, it was marked, sent and paid on a certain date. And Ms. Marino, who is an uninterested person, testified that the bill she received after that date that it was marked, the bill on pay, didn't have that date on it. The same is true for a bill that was received in discovery for the Timber Framers, which was falsely marked as paid. But when the Timber Framers person came up there and testified, it hadn't been paid and it didn't have that date on it. Besides opening this business, they used the corporate assets to fund this business. One important asset, and this goes right to Levy v. Markle Sales, is the daughter, Hannah Lyon, who was trained at Cornucopia. And then she went directly from Cornucopia over to Coldy's, where she was basically the manager of that store, taking all of that training. Marilyn Carlson testified, and David testified, that they saw Susan doing Coldy's work while being paid on Cornucopia time. The Cornucopia store was used in all of 2006 as a storehouse, not only taking bakery product from Cornucopia, but also taking things from the storage room, even taking things like straws, napkins, toilet paper, paper type items that weren't paid for, that weren't accounted for. And when the Carlsons asked, it was always none of your business. The Carlsons noted that their store at Cornucopia was running out of coffee, was running out of sugar, but there wasn't any accounting. And that was the plan. It made it difficult for the Carlsons to come up with a figure amount. The court was required to make a determination of the fair value of the corporation. The court used the business valuation, the market value, without taking into account the other factors that are required or allowed under the Business Corporation Act. Much of the testimony that the trial court found was much too lengthy and repetitive was testimony about what the plaintiffs felt, what they put into this business. And that's what the Business Corporation Act requires or allows the court to take into account. What were the reasonable expectations? What did they forego to come into this business, to make this business work? And the testimony, Marilyn's testimony came in, but David's testimony was summarily cut off on objection by opposing counsel that it was just too repetitive. So some of the testimony was just simply excluded about what these people put into the corporation, what their expectations were, and how they were cut out of it. One of the pieces of evidence that did come in on the fair value is that the parties paid $90,000 to purchase a bakery, which is Uncle Billy's Bakery, which became part of Cornucopia. They purchased that in 1997. That wasn't taken into account. The court found that the value of the corporation was only $80,000. It couldn't have taken into account that purchase of $90,000 that the parties put into it. The evidence showed that in 2005, after the opening of Caldi's, Susan Lyon became overwhelmed with her work. She wasn't doing the work that she had done, and that was her job to do. Some accounts sent checks to Cornucopia, they were left in a drawer, they got stale. It wasn't business judgment. One of the contentions in the case was about settlement letters that were sent back and forth. There's a figure of $200,000 or $225,000. That figure comes from a pre-litigation and pre-trial business negotiation where the parties, before any lawyers were involved, got together and decided what the value was for one side to buy the other side out. And $225,000 is the amount that they came to. And that's something that the court can consider in fair value as well, which it didn't. But when those settlement letters were brought in, only the settlement letters were brought in that the plaintiffs sent. Settlement letters saying they wanted the money that the defendants had agreed to pay them. And those were characterized as ransom, or as bad faith, or as vexatiousness. And indeed those settlement letters were used by the court to make findings against David and Marilyn for attorney fees. The four directors had showed an interest in opening a coffee shop back in 2004. But when the opportunity came available later in 2005, Susan and Maurice secretly went behind the back of the other directors and opened that coffee shop on their own, even after Marilyn had noticed that the crackpot was closing and talked about buying their espresso machine to bring into Cornucopia so that they could break into the coffee drink market. The opportunity had to at least have been offered to the entire corporation. That was a breach of fiduciary duty right now. The unrefuted testimony is that the parties had money that they could have put into it if they wanted to. They could have lent their own money to the corporation. They could have taken out a business loan like they did when they purchased the Uncle Billy's Bakery for $90,000. But that opportunity wasn't offered. The other evidence from Susan's deposition and from the bills is that Caldi's got special discounts that no other business got. Now Cornucopia was a store that had a bakery. They sent bakery out to other stores who purchased it at certain prices that had been agreed upon, a certain discount that had been agreed upon by the corporation directors. But with Caldi's, it was different. They paid cost. Sometimes they paid just a tiny bit above cost, but they got a special pricing that no other business got. And the important thing is that no one ever talked to David and Marilyn about it. This all came out after the litigation was filed. But during the year that the Carlsons were trying to negotiate, trying to figure out what was going on with their store, they were just told, it's none of your business, it's none of your business. In a close corporation, the shareholders owe a fiduciary duty to each other to deal fairly honestly and openly. There was none of that going on. The Lions used Cornucopia to advertise their new business. They brought in coupons that they put at the business for Caldi's. They started radio advertising for Caldi's, which gave, as a prize, free food at Cornucopia. And those coupons are in the record as exhibits. And testified to by Marilyn, who found those coupons and was surprised and appalled that these coupons were being taken in at their store. In this case, the plaintiffs were punished three times for the same conduct. And this is the Rule 213 disclosures. They were punished once by the exclusion of witnesses and the exclusion of testimony. They were punished a second time, as the trial court said, by they lost their case, ruling against them because of these discovery sanctions. And the third punishment was the sanctions under the Business Corporation Act of $108,615, which the court said was because of these discovery violations. Section 1260J of the Business Corporation Act is subject to statutory construction. Mr. Robertson says it just doesn't make sense, but that's not statutory construction. The statute states that these sanctions are available for the actions of a party, not for the actions of a party's attorney. If the legislature had wanted to sanction a party for the actions of their attorney, they have plenty of statutes in Rule 137 and the federal rules as examples to put that in the statute. The statute says that the sanctions are only available against a party. It doesn't say against an attorney. In this case, sanctions were awarded jointly and separately against David, Marilyn, and myself for actions of myself, and I'm not sure if it was for actions of them or not. It was unclear to me, but it seems that it was for discovery sanctions were the third punishment. I'd also submit that the sanctions were so excessive as to be exorbitant. Council fees doesn't say the fees for a paralegal. I've argued in my brief about Ms. Steck, who got awarded $100 an hour. She couldn't even really testify about what she did. She sat at council table for all the days of trial at $100 an hour, and she's not a certified paralegal. She has a bachelor's degree. I cited a case that says that a paralegal is a cost that's included in the council fees. With regard to the fees against an attorney, Supreme Court Rule 137 appears to be broader than the statute, doesn't it? Supreme Court Rule 137 is broader than the Business Corporation Act, and I think that the reason that the Business Corporation Act is phrased like this just from general reading that I've done is because we're talking about an act that has to regulate businesses of all kinds, and many times these big corporations will do things to frustrate the plaintiff, who might be a single shareholder or a smaller group of shareholders in discovery or something, and have so much more money available to them that they really can do something to frustrate the judicial system. And I think that's where it is. But this wasn't awarded under Rule 137. This was definitely awarded under Section 1260J of the Business Corporation Act. It kind of does. Are there any other questions? I guess not. Thank you, Ms. Redwood. Mr. Robertson, you will have 10 minutes. That is correct, Your Honor. I'm here on behalf of Jeffrey – excuse me, on behalf of Maurice and Susan Lyon, co-defendants, and I apologize in advance. I've got a little focusing problem with an eye thing, so I have some trouble reading. This has been the most frustrating case of my career. Frustrating particularly because it's been very difficult to get at the issues. I think the court is well aware that it's almost impossible to prove a negative. And when you are defending clients who are accused of fraud, theft, and misconduct, you are in essence having to negate whatever evidence is offered against them. The problem with this case, from day one, from the original complaint all the way through the trial, through the briefing on appeal, and through the argument this morning, is just this. The plaintiffs have the burden of proving their case. Saying it in a pleading does not make it true. Saying it 50 times in court doesn't make it true. One party testifying to it doesn't make it true. Actions speak louder than words, and if you look at our brief, you will see that when the plaintiff's case was presented, there were significant problems with their version of reality. The cross-examination of Marilyn Carlson, to a large extent, eviscerated their case. Marilyn Carlson kept a diary or calendar through the course of these events. There are no references to theft. There are no references to all of these alleged disputes. There are mostly complaints about Susan Lyon being ill and being gone to the hospital, and this and that. I'm not saying the parties behaved well. What I am saying is that the trial court sat through almost two years of trial, heard the evidence, assessed the credibility of the witnesses, and decided that at the end of the plaintiff's case, they hadn't proven anything in terms of these allegations. If you go to our brief, pages 33 through 35, there are the specific findings of fact of Judge Stewart on all these issues. And those findings of fact, if supported in the record, call for affirmance of his decision. I am a firm believer that cases should be about facts in law and not about the personalities of the lawyers who try the cases. But let's look at the issues that are raised on appeal. A summary judgment was denied. There were conflicting issues as facts about the same evidence. Evidence was excluded. The evidence was excluded because it hadn't been disclosed. And although all this isn't in the record, it's not my burden to make that record, but when we answered interrogatories originally, we said, we'll disclose our witnesses after you disclose yours. Nobody knows at the beginning of a case who your witnesses are going to be. We went through a year and a half of discovery. They made no disclosures. What about the disclosures about all these opinions about damage calculations? We asked about them in an initial set of interrogatories and got nothing of substance. We asked about them at a deposition where the notice of deposition for Marilyn Carlson said, bring the damage calculations to the deposition. She had none. She offered very little. Same thing with David Carlson. So after the trial court had four times extended the discovery deadlines, and after all the parties had been deposed, my client had spent a day and a half in depositions, we had disclosed over 9,000 documents. They had access to our personal financial records. They had access to everything they would need to trace all of this if they needed to trace it. And what do we have at trial? We have rehearsed direct examination and lots of opinions that haven't been disclosed. I stand by the statement of facts in the brief because I can't possibly summarize it all here. Let's look at the issues that they raise on appeal, the big ones. They contest that the business was worth $80,000. That was a court-appointed, stipulated appraiser who did that value. Yes, there had been prior offers. Actually, my clients probably offered that money to get out of the business with these people. That doesn't mean it was the best evidence of what the business is actually worth. So Mrs. Redwood offered by stipulation the appraisal and now attacks it, but has offered nothing in its place. It's the only evidence. Let's look at the evidence that the trial judge addressed on these claims of breach of fiduciary duty. He specifically addressed all of them in detail, and you can go to the record and find the record that supports his decisions. The record is 12,000. I'm sorry. I think the record's about 10,000 pages. I forget how many pages are in the record. 8,000 pages. There were 12,000 documents. Let's talk about the trial. Ms. Steck, my paralegal, her role in the trial was digging out documents as this testimony comes in about all these things that supposedly happened and not being able to find any correlation in the documents. And when you go back and you look for the evidence of the theft and the evidence of this, the evidence of the specific things that she alleges, there's no documentary proof of any of it. There's not a letter, not a memo, not a complaint, not a consultation. It's all about why wasn't Susan at work. And, of course, if you look at the trial record carefully, you'll see that everything that was decided was subject to a reexamination, a rehearing, a motion for reconsideration, ad infinitum. That, in all candor, is why I believe Judge Stewart finally awarded fees under the Business Corporation Act. You know, it's not only the rich big-cat corporations that run up the bills in litigation and make other parties bear unnecessary costs. I'm sorry. Mrs. Redwood has cited arguments as evidence. She's cited depositions that she never put into the record. She has cited things and omitted things from her statement of facts. She's raised issues in her reply brief that weren't argued on appeal. She holds up a single piece of paper and would have you decide that, based on that single piece of paper, you can reverse the trial court's finding, which heard all of the evidence and weighed it. Thank you. At the end of the day, and I guess this is what I come back to, sadly, the trial judge heard the evidence. The trial judge made a determination that this case was tried by the Carlsons and their attorneys in an arbitrary and vexatious manner. Okay, you're about to speak to the attorney's fees? Yes. Yeah, please. Arbitrary and vexatious. The definition is without reason, without reasonable cause. And as of September 2008, at least this was Judge Stewart's finding, Mrs. Redwin knew she didn't have another appraisal. She knew what she didn't have in terms of evidence. She knew that we had 213 issues. She knew that the business was worth $80,000, not $400,000 or $500,000, and she had no contrary proof. We tried to settle. She refused. As far as the admissibility of settlement negotiations, it can be offered to prove Brad's faith, and if you'd like a clear statement of it, go to the New Illinois Rules of Evidence because the rule speaks directly to it. Settlement negotiation can be offered if it's on the issue of whether or not the litigation was carried on in good faith. With all due respect. What about the issue of the attorney's fees under the BCA being levied upon just the parties and not the attorney? Well, the Carlsons hired Mrs. Redwood. Nothing in the BCA would suggest that the client is immune from liability for whatever the attorney does. I can make the argument either way. There is some case law on the predecessor to Rule 137, Section 2611, I believe, that had both a prior section that reads like the BCA section and then an amended section that included attorneys. The case law under the prior version says that parties means parties and not attorneys. So I wonder if you could speak to that. I don't mean to be laying this in your lap. Candidly, Judge, I don't care because if the party's attorney tries a case in an unreasonable or vexatious manner, are the parties responsible for the trial? I also know that Rule 137 is interesting, but it applies to pleadings and doesn't address the totality of the circumstances, which is why we addressed it in the BCA. The co-appellee has a Rule 137 issue because it all came up under the pleadings. But you can't immunize the parties from the liability for what they're saying. No, the statute doesn't do that, nor does the rule. And I think we've offered you can argue it either way, candidly. I believe that Mrs. Redwood should be responsible. I believe certainly the Carlsons are responsible for how the case was tried by their attorney under their authorization and direction. And if you look at the record, they clearly knew what was going on. Any questions? Thank you, Mr. Gross. Thank you very much. Mr. Gross, you have five minutes, I believe. Thank you. May it please the Court, my name is Mark Gross. I represent Jeffrey Lyon, counsel as well. I'm here only on the issue of the sanctions that were assessed against Ms. Redwood and her clients with respect to the claims, pleadings, and various arguments that have been asserted against Jeffrey Lyon. That standard, as counsel has agreed, is an abuse of discretion standard. An abuse of discretion must be determined by the court based upon the record that has been submitted, which should include what the judge's rulings were. How did the judge address the evidence? How did the judge address the arguments that were made? How did the judge apply the law? There's some case law that was cited in our brief that specifically states that those things need to be tied together by the court below in ruling on a motion for sanctions, and that the court in review in determining whether there's been an abuse of discretion can find an abuse of discretion only where it appears that judge was uninformed of the facts, that his ruling was based on invalid reason, and his ruling doesn't follow from the facts. It doesn't logically follow from the facts. But counsel for the plaintiffs has made that impossible for this court to review because they did not supply this court with a proper record. They did not supply this court with a transcript of two hearings that were held in which we had evidentiary hearings over a course of two days in this case on only the issue of 137 sanctions. Neither transcript was provided. And the latter of those two days, which was the November 21, 2008 hearing, is when Judge Stewart pronounced all of his basic lines of facts, all of his reasoning, all of his conclusions as to the validity of the arguments that counsel for both parties have made as to them. And that's not before the court. Our Supreme Court has specifically stated that where there is no transcript of a ruling where the standard of review is abuse of discretion, that the trial court must be given deference in that ruling, and that the issue has simply not been presented to the court in a way that the court for review can possibly find that the court below abused its discretion. So the absence of proper record for this court requires the court affirm the issue of whether sanctions were properly awarded on the issue of the 137 sanctions. The other issue is, of course, the amount of attorneys fees that the court determined were owed a year later. Now, the appellant's brief makes repeated reference to and citation to that transcript, but not once for the purpose of arguing whether or not the amount of sanctions that were assessed was proper. The appellants referred to that transcript only for the purpose of arguing whether sanctions should have been awarded a year earlier. There's zero argument made in the appellant's brief that addresses in any way the amount of sanctions. And as a result, that issue is weighed. There's nothing other than the blanket, naked statement that the court erred in awarding sanctions in that particular amount. Not backed up by any citation to any authority, not backed up by any kind of argument that is containing the type of things that this court, as repeatedly ruled, is required to constitute an argument on appeal under the Supreme Court rules. So on both of those issues, the absence of these things before the court requires the court to confirm the trial court's ruling on the grant of sanctions. Now, there's one last issue that the appellants have raised, and that is that the trial court also erred and abused its discretion in denying the plaintiff's motions for sanctions. Now, the plaintiff's attorney has employed the practice, it appears, of responding to motions for sanctions with her own motions for sanctions, or responding to pleadings to dismiss with her own motions for sanctions. We've seen that in this appeal. We've seen the motions for sanctions that counsel filed when I filed my motion to dismiss the appeal. But we've also seen how counsel treats the facts in that motion. In her motion seeking sanctions, she submitted an affidavit in which she specifically stated under oath that it was the filing of my motion to dismiss that caused her to have to file a motion for extension of time in this case, that she didn't anticipate the filing of a motion to dismiss. It disrupted her preparation of the record that she was preparing for this court and her brief. What she doesn't say, and which is so easily verifiable, is the fact that she filed her motion for an extension of time 11 days before she received my motion to dismiss. It's a simply false statement bolstered and repeated by her with much bluster. And those are the kinds of things that we faced in the trial court below. That's the kind of conduct that the court below found to be sanctionable. Unfortunately, the court doesn't see the transcript of that record, but we submit to the court that there was plenty there for the court to have justified its ruling. And we submit that the court needs to affirm that ruling. Thank you for your time. Thank you. Mr. Gross and Ms. Redwood, any rebuttal? Yes, Your Honor. Thank you. The diary that Mr. Robertson referred to, if you will look at the exhibits, was not a diary. It was a calendar, where work days off were calendared, and the reasons for it. It wasn't a diary. And that was brought out in the testimony. Mr. Robertson, when they first answered our 213 interrogatory, which was propounded March 1st of 2007, I quoted their reply on page 14 of our reply brief, and it did not say we'll disclose our witnesses after you disclose your witnesses. It said we don't know who our witnesses are yet, and we'll disclose them later, and we will supplement. As far as the value of the corporation, fair value is not limited to market value. The Business Corporation Act makes that clear, and Professor Murdoch's treatise in the Illinois Practice Series makes it very clear. There are many, many other things that are to be taken into consideration for market value, and those are the things that the plaintiffs were testifying about. The single piece of paper that I hold up proved the damages that Judge Stewart said did not exist. 2006, a full year of taking product without a single payment. It doesn't matter that the payment was made later on December 31st of 2007, and then put into the 2008 accounting, because 2007 was the valuation year, and they didn't want that $10,000 in the 2007 year. It matters that it didn't come there in 2006, and the corporation was deprived of that capital to operate. Under the abuse of discretion standard on the Jeffrey Line, Mr. Gross' case, the court did not take into account at all the novel argument, but important argument, that under the Business Corporation Act, Jeffrey Line was required to file a form and pay a $5 fee to the Secretary of State to withdraw as the registered agent. He never did that. These folks, none of them, and the evidence is clear, knew about that. They trusted and relied on him that he was taking care of it. It's a novel argument. I couldn't find any cases on it, but the court below just simply didn't address that argument at all. The amount of sanctions, it was simply impossible for me to be able to argue in a few pages this motion for the sanctions on Jeffrey Line. I did ask the court to refer to our pleadings from below. I did ask for an extension of pages and was denied an extension of pages. It's a large case. There's a lot of issues. I simply couldn't fit it all into 50 pages, so I couldn't argue everything that I wanted to argue. If there's no other questions, that concludes my rebuttal. I don't think so. Thank you. Thank you, Ms. Redwood, and thank you all for your argument today. We will take this matter under advisement and get back to you with a written disposition shortly.